# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LATASHA DAVIS, JENNIFER ELLIOTT, and MARLA ALIECE SIMS-KING, Individually and as representatives of a class of participants and beneficiaries in and on behalf of the WASHINGTON UNIVERSITY RETIREMENT SAVINGS PLAN, | ) ) ) ) ) ) ) ) | |
| | | Case No. 4:17-cv-01641-RLW |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| WASHINGTON UNIVERSITY IN ST. LOUIS, WASHINGTON UNIVERSITY IN ST. LOUIS BOARD OF TRUSTEES, WASHINGTON UNIVERSITY IN ST. LOUIS RETIREMENT PLAN ADVISORY COMMITTEE, WASHINGTON UNIVERSITY IN ST. LOUIS PLAN ADMINISTRATION COMMITTEE, and WASHINGTON UNIVERSITY IN ST. LOUIS EXECUTIVE VICE CHANCELLOR AND CHIEF ADMINISTRATIVE OFFICER | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... IV

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

      A.      Prosecution and Settlement of the Action.................................................2

            1.      Motion to Dismiss and Appellate Practice......................................2

            2.      Discovery Proceedings.....................................................................3

            3.      Class Certification, *Daubert*, and Dispositive Motions ..................3

            4.      The Settlement Negotiations and Proceedings .................................4

      B.      The Terms of the Proposed Settlement ......................................................4

            1.      Monetary Benefits............................................................................4

            2.      Non-Monetary Benefits ...................................................................5

            3.      Attorneys' Fees and Expenses, Plaintiffs' Compensation Awards, and Administrative Fees .................................................................6

            4.      Release of Claims ............................................................................6

      C.      Settlement Notice and Reaction to the Settlement.....................................6

      D.      Review and Approval by the Independent Fiduciary .................................7

III.    ARGUMENT .......................................................................................................9

      A.      The Settlement Is Fair, Reasonable, and Adequate and Should be Finally Approved....................................................................................................9

            1.      Legal Standard .................................................................................9

            2.      The Eighth Circuit's Van Horn Factors Support Approval of the Settlement .....................................................................................10

                  a.      The Merits of Plaintiffs' Case Weighed Against the Terms of the Settlement Support Approval ...................................10

                  b.      The Costs, Risks, and Delay of Further Litigation Support Settlement ......................................................................12

                  c.      Defendants' Financial Condition .......................................13

        d.      No Opposition to the Settlement.......................................14

3.      Class Counsel Have Significant Experience with Complex ERISA Class Actions and Have Adequately Represented the Settlement Class..................................................................................................14

4.      Plaintiffs Have Adequately Represented the Settlement Class......15

5.      The Settlement Was Reached After Arms'-Length Negotiations with the Assistance of an Experienced Mediator...........................16

6.      Settlement is Otherwise Fair, Reasonable, and Adequate ............16

        a.      The Proposed Method of Distributing Relief to the Class Will be Highly Effective and Equitable............................16

        b.      The Request for Attorneys' Fees and Expenses and Plaintiffs' Compensation Awards Are Fair, Reasonable, and In Line with Other Cases..............................................17

IV.     CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Travelex Inc. Servs.*,
  No. 8:18-cv-00362-JMG-SMB, 2021 U.S. Dist. LEXIS 181238 (Sept. 22, 2021 D. Neb.) ..... 12

*Andrus v. New York Life Ins. Co.*,
  1:16-cv-05698-KPF, Dkt. 84 (S.D.N.Y. Jun. 15, 2017) .......................................................... 10

*Armstrong v. Board of Sch. Dirs. of Milwaukee*,
  616 F. 2d 305 (7th Cir. 1980) ............................................................................................... 14

*Beesley v. Int'l Paper Co.*,
  No. 3:06-cv-703, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ............................... 17

*Bonime v. Doyle*,
  416 F. Supp. 1372, 1384 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) ...................... 13

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) .............................................................................................. 12

*Braden v. Wal Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ................................................................................................ 12

*Brown-Davis v. Walgreens*,
  No. 1:19-cv-05392 (N.D. Ill.) ............................................................................................... 10

*Cassell v. Vanderbilt Univ.*,
  No. 3:16-cv-2086, 2019 U.S. Dist. LEXIS 242062 (M.D. Tenn. Oct. 22, 2019) .................... 17

*Cates v. Trustees of Columbia Univ. in City of New York*,
  No. 1:16-cv-6524, 2021 U.S. Dist. LEXIS 200890 (S.D.N.Y. Oct. 18, 2021) .................. 17, 18

*Clark v. Duke Univ.*,
  No. 1:16-CV-1044, 2019 U.S. Dist. LEXIS 105792 (M.D.N.C. Jun. 24, 2019) ..................... 10

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................................... 12

*Cooper v. Home Care, Inc.*,
  No. 4:16-cv-1293-DGK, 2018 U.S. Dist. LEXIS 119748 (W.D. Mo. Jul. 18, 2018) .............. 14

*Cullan & Cullan LLC v. M-Qube, Inc.*,
  No. 8:13-cv-172, 2016 U.S. Dist. LEXIS 132325 (D. Neb. Sept. 27, 2016) .......................... 13

*Cunningham v. Cornell Univ.*,
  No. 1:16-cv-6525, Dkt. 441 (S.D.N.Y. Dec. 22, 2020) .................................................... 11, 17

*Daugherty v. University of Chicago*,
  1:17-cv-3736, Dkt. 77 (N.D. Ill. Sept. 12, 2018) ....................................................... 10, 14, 18

*Davis v. Wash. Univ. in St. Louis*,
  960 F. 3d 578 (8th Cir. 2020) ............................................................................................. 2, 15

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ................................................................. 12, 14

*EEOC v. Faribault Foods, Inc.*,
    2008 U.S. Dist. LEXIS 29132 (D. Minn. March 28, 2008) ................................ 16

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ..................................................................... 12

*Henderson v. Emory Univ.*,
    No. 1:16-cv-2920, 2020 U.S. Dist. LEXIS 218676 (N.D. Ga. Nov. 4, 2020) ............ 17

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    892 F.3d 968 (8th Cir. 2018) .................................................................. 10, 11

*In re Uponor, Inc., F1807 Plumbing Fittings Prods Liab. Litig.*,
    716 F.3d 1057 (8th Cir. 2013) .................................................................. 9, 10

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................. 19

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
    No. 08-MDL-1958 ADM/AJB, 2013 U.S Dist. LEXIS 26557 (D. Minn. Feb. 27, 2013) ........ 14

*Karg v. Transamerica Corp.*,
    No. 1:18-cv-00134-CJW-KEM, Dkt. 98 (N.D. Iowa Nov. 11, 2021) ................... 10, 17, 18

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ................................................................... 9, 10

*Kelly v. Johns Hopkins University*,
    No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ............. 17

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-cv-02781 (SRN/JSM), 2015 U.S. Dist. LEXIS 91385 (D. Minn. Jul. 13, 2015) ... passim

*Lechner v. Mut. of Omaha Ins. Co.*,
    No. 8:18-cv-00022-JFB-CRZ, 2021 U.S. Dist. LEXIS 23742 (D. Neb. Feb. 8, 2021)  14, 17, 18

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*,
    921 F.2d 1371 (8th Cir.1990) ....................................................................... 9

*Marshall v. NFL*,
    787 F. 3d 502 (8th Cir. 2015) ................................................................ 10, 13

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ................................................................... 10

*Milken & Assoc. Sec. Lit.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................... 13

*Nicolas v. Trustees of Princeton Univ.*,
    No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) ..................... 11, 14, 17, 18

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..................................................................... 9

*Price v. Eaton Vance*,
    No. 1:18-cv-12098-WGY, Dkts. 52 (D. Mass. Sep. 24, 2019) ................................. 10

*Short v. Brown Univ.*,
    No. 1:17-cv-00318, Dkt. 55 (D.R.I. Aug. 2, 2018) ........................................... 14, 18

*Sims v. BB&T Corp.*,
    No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019) ............................ 10

*Sweda v. University of Pennsylvania*,
    No. 2:16-cv-4329, 2021 U.S. Dist. LEXIS 23990 (E.D. Pa. Dec. 14, 2021) ............................ 17

*Tibble v. Edison Int'l*,
    No. 07-cv-5359, 2017 U.S. Dist. LEXIS 130806 (C.D. Cal. Aug. 16, 2017) ........................... 13

*Tracey v. Mass. Inst. of Tech.*,
    No. 1:16-cv-11620, Dkt. 317 (D. Mass. May 29, 2020) ........................................... 18

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ................................................................. 13

*Tussey v. ABB, Inc.*,
    No. 06-CV-04305-NKL, 2019 U.S. Dist. LEXIS 138880 (W.D. Mo. Aug. 16, 2019)  16, 17, 18

*Tussey v. ABB, Inc.*,
    No. 2:06-cv-4305-NKL, 2017 U.S. Dist. LEXIS 203969 (W.D. Mo. Dec. 12, 2017) ............. 13

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ................................................................. 10

*Wineland v. Casey's Gen. Stores, Inc.*,
    267 F.R.D. 669 (S.D. Iowa 2009) ............................................................. 18

## Other Authorities

Albert Conte & Herbert Newberg,
    *Newberg on Class Actions* § 11.41 (4th ed. 2002) ................................................. 9

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.71 (2004) ........................................ 17

William Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ................................... 11

## Rules

FED. R. CIV. P. 23(e)(2) .......................................................................... 9, 16

## I.    INTRODUCTION

Plaintiffs Latasha Davis, Jennifer Elliot, and Marla Aliece Sims-King ("Plaintiffs"), on behalf of themselves and approximately 27,000 participants in the Washington University in St. Louis Retirement Plan (the "Plan"), submit this memorandum in support of their unopposed motion for final approval of the proposed $7,500,000 cash Settlement,[1] plus significant therapeutic relief, resolving all of the pending claims and bringing to an end this five-year-long litigation.

This Settlement meets this Circuit's standards for final approval under Rule 23 and is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. It provides a substantial and immediate benefit in the form of a multi-million-dollar cash payment in addition to important non-monetary relief that will benefit the Plan for years. It is the product of hard-fought litigation, which included substantial motion practice, a successful appeal to the Eighth Circuit Court of Appeals, the completion of extended merits and expert discovery, the exchange and review of voluminous documents, and arm's-length negotiations between experienced ERISA counsel, directed by a seasoned and respected mediator.

The Settlement is particularly favorable given the risks of continued litigation. The Action presented significant risks in establishing both liability and damages through continued litigation that could have resulted in no recovery at all for the Settlement Class. In addition, if the litigation had continued, Plaintiffs would have been required to prevail at several additional stages, including class certification, summary judgment, trial, and any appeals. This process would have taken years and presented risks at each phase. The Settlement avoids these risks and provides a substantial and certain benefit rather than the mere possibility of a recovery after additional years of litigation. Indeed, the Settlement has been well received by Settlement Class Members; to date, no objections have been received.

Therefore, for the reasons set forth below, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

---

[1] Capitalized terms have the meaning set forth in the definitions section of the Settlement Agreement executed on April 15, 2022. (ECF No. 146-1.)

## II.    BACKGROUND

### A.    Prosecution and Settlement of the Action

Class Counsel were retained by Plaintiffs, individually and on behalf of a putative class of participants and beneficiaries of the Plan, with respect to allegations that Washington University breached their fiduciary duties of prudence and loyalty in managing and administering the Plan, thereby causing the Plan to incur excessive recordkeeping and investment fees. (*See* Joint Declaration in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, and Plaintiffs' Motion for Attorneys' Fees and Expenses, Plaintiffs' Compensation Awards, and Administrative Expenses ("Joint Decl.", ¶ 6.) As set forth below, Class Counsel have devoted over 5,200 hours and advanced over $600,000 in out-of-pocket expenses to develop and pursue the claims against Washington University and negotiate a favorable Settlement for the Class. (*Id.*)

### 1.    Motion to Dismiss and Appellate Practice

The initial complaint was filed by Plaintiffs Latasha Davis and Jennifer Elliott on June 8, 2017, in Case No. 4:17-cv-01641. (ECF No. 1.) Plaintiff Marla Aliece Sims-King filed a separate complaint on June 23, 2017, in Case No. 4:17-cv-01785, alleging substantively similar claims. The Court granted an unopposed motion to transfer and consolidate the matters into the first-filed case, No. 4:17-cv-01641 (ECF No. 15), after which Plaintiffs filed a Consolidated Class Action Complaint ("CAC") on August 21, 2017 (ECF No. 24). Defendants moved to dismiss (ECF No. 34), and Plaintiffs opposed the motion (ECF No. 36). The Court granted Defendants' motion and dismissed Plaintiffs' CAC with prejudice on September 28, 2018. (ECF Nos. 51.) Plaintiffs appealed the Court's dismissal to the United States Court of Appeals for the Eighth Circuit. (ECF No. 52.)

On May 22, 2020, after full briefing and argument, the Eighth Circuit entered an Order affirming in part and reversing in part the judgment of this Court and remanding for further proceedings. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020). After remand, Plaintiffs filed an Amended Consolidated Class Action Complaint (ECF No. 64.), and Defendants filed an Answer (ECF No. 65).

On February 2, 2021, with leave of Court (ECF No. 82), Plaintiffs filed the operative

Second Amended Consolidated Class Action Complaint ("SAC"). (ECF No. 83.) Defendants filed an Answer and Defenses to the Complaint on February 16. (ECF No. 86.)

### 2. Discovery Proceedings

After the Court held a Rule 16 conference and issued a Case Management Order (ECF No. 69), the parties undertook – and completed – extensive fact and expert discovery, which included:

- Taking 9 depositions, including 5 fact witnesses and 1 expert witness of Washington University, and 3 fact witnesses from the Plan's investment advisor and recordkeeper;
- Defending each of the 3 Plaintiffs' depositions, and Plaintiffs' 2 experts' depositions;
- Serving and responding to document requests of fact and expert witnesses;
- Reviewing and analyzing over 20,000 documents, consisting of more than 113,000 pages, produced by Defendants and non-parties;
- Retaining and working closely with two experts, each of whom submitted reports and was deposed;
- Negotiating a Protective Order (ECF No. 75) and an ESI Protocol (ECF No. 72);
- Negotiating with Washington University's attorneys regarding various document, data production, and other discovery issues, including through numerous telephone conferences and exchanges of written correspondence;
- Moving to bar Defendants from seeking to call as witnesses at trial potential witnesses whom Defendants did not identify by means of an amendment to their initial disclosures until after 5 pm on the last day of the fact discovery period (ECF No. 114); and
- Serving subpoenas and negotiating with two non-parties to obtain documents and deposition testimony bearing upon the Plan's expenses and fees. (Joint Decl., ¶ 10.)

### 3. Class Certification, *Daubert*, and Dispositive Motions

Class certification was fully briefed but has not yet ruled upon by the Court. Plaintiffs filed their motion for class certification on March 15, 2021. (ECF Nos. 92, 93.) Defendants filed their opposition on May 11. (ECF No. 104.) Plaintiffs replied on June 10. (ECF No. 110.)

On January 14, 2022, Defendants filed a motion to exclude Plaintiffs' liability expert and

a motion for summary judgment. (ECF Nos. 126-133.) Defendants did not seek to exclude Plaintiffs' loss expert. Briefing on Defendants' motions had not concluded prior to reaching the Settlement.

### 4.    The Settlement Negotiations and Proceedings

On January 26, 2022, after exchanging extensive mediation statements, the parties participated in a full-day mediation before Hunter Hughes, III, who served as a neutral mediator approved by the Court. No settlement was reached on January 26, but discussions continued between the parties and Mr. Hughes. Once an agreement-in-principle was reached nearly one month later, consideration of the pending motions was stayed by the Court. (ECF No. 142.)

Class Counsel then devoted considerable time with Defendants' counsel  negotiating and documenting the Settlement Agreement. (Joint Decl. ¶ 14.) Class Counsel focused on developing a plan of allocation that would fairly compensate class members. (*Id.*) Class Counsel then prepared a preliminary approval motion, which details the Settlement terms. (*See* ECF No. 146.) The Court granted preliminary approval on April 18. (ECF No. 147.)

### B.    The Terms of the Proposed Settlement

### 1.    Monetary Benefits

Under the Settlement, Defendants will pay $7,500,000 into the Qualified Settlement Fund. (Joint Decl. ¶ 20; Settlement, Article 5.) An initial payment of $100,000 from the Gross Settlement Amount was deposited into an escrow account following the Court's entry of the Preliminary Approval Order for the payment of initial Administrative Expenses, such as the issuance of the Settlement Notice. (Settlement § 5.4.) The balance of the Gross Settlement Amount ($7,400,000) will be deposited into the Escrow Account within thirty (30) calendar days after the Court's entry of a Final Approval Order. (Settlement § 5.5) Following any deductions for an award of Attorneys' Fees and Expenses, Plaintiffs' Compensation, and all Administrative Expenses including fees of the Independent Fiduciary, (the "Net Settlement Amount"), the Net Settlement Amount will be distributed to Settlement Class Members according to the Settlement's Plan of Allocation (*Id.* § 6.)

Under the Plan of Allocation, the Settlement Administrator shall calculate each Settlement

Class Member's share of the Net Settlement Amount based on the quarter-end account balances proportionate to the quarter-end account balances of all Settlement Class Members for each quarter during the Settlement Class Period. (*Id.* § 6.3.) Settlement Class Members eligible for a distribution are Current Participants, Former Participants whose Preliminary Entitlement Amount is at least $25 ("Former Participants"), or a Beneficiary or Alternate Payee of a Current Participant or Former Participant ("Beneficiaries or Alternate Payees"). (*Id.* § 6.2.) Settlement Class Members will not be required to submit a claim form to be eligible for a distribution. Current Participants in the Plan with an Active Account will have their Plan accounts automatically credited with their share of the Net Settlement Amount. (*Id.* § 6.2.1.)  Former Participants will receive their share of the Net Settlement Amount via a tax-qualified distribution process. (*Id.* §§ 6.2.1-6.2.2, 6.10-6.11.) Beneficiaries and Alternate Payees will receive their share of the Net Settlement Amount via check. (*Id.* § 6.2.3.)

### 2.    Non-Monetary Benefits

The Settlement also includes significant non-monetary benefits for a period of three (3) years from the Effective Date, with Defendants agreeing:

- to provide annual fiduciary training for all members of the Washington University Retirement Plan Advisory Committee ("RPAC"). Defendants also will provide this training to any new RPAC member(s) at or around the start of their tenure on the RPAC. As part of this annual training, each voting member of the RPAC shall acknowledge that he, she or they serve in a fiduciary capacity and understand his, her or their obligations as a fiduciary;

- to evaluate the Plan's Investment Policy Statement ("IPS") at least annually, with input from the Plan's investment consultant, and implement any updates to the IPS as Defendants may deem appropriate;

- to issue a Request for Proposal for Plan recordkeeping services;

- that the Plan's current investment consultant, CAPTRUST, will advise Defendants with respect to the Plan's investment options and fees, which advice will include consideration of the performance of Plan investment options, the costs/fees of those investment options, the reasonableness of Plan recordkeeping fees (generally, and in light of the particular services provided to the Plan), the method or means of paying Plan recordkeeping fees, and the overall Plan investment lineup (including the number of options, diversification

among those options, etc.);

- to continue maintaining the privacy of Settlement Class Members' confidential personal information, and to instruct the Plan's recordkeeper(s) not to use (or allow to be used) Settlement Class Members' personal information obtained as a result of providing recordkeeping services to the Plan for the purpose of selling non-Plan services or products.

(*Id.* § 10.1.1.-10.1.5.) The Non-Monetary Relief will provide significant value, above and beyond the cash component of the Settlement, to the Plan's participants.

### 3. Attorneys' Fees and Expenses, Plaintiffs' Compensation Awards, and Administrative Fees

Plaintiffs have, concurrently with the filing of this Memorandum, petitioned the Court for reasonable attorneys' fees of $2,500,000 or one-third of the $7,500,000 monetary value of the Settlement, and reimbursement of $623,730.14 in litigation expenses; Plaintiffs' Compensation awards not to exceed $5,000 for each Plaintiff; and Administrative Expenses, which include the fees of the Settlement Administrator and the Independent Fiduciary. All amounts are subject to Court approval and shall be paid from the Settlement Fund before distribution to Settlement Class Members. (*See generally*, Settlement, Article 7, and Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses, Plaintiffs' Compensation Awards, and Administrative Expenses.)

### 4. Release of Claims

In exchange for the relief provided by the Settlement, Plaintiffs, Settlement Class Members, and the Plan will release Defendants and affiliate persons and entities from all Released Claims. (*Id.* § 2.32 – defining Released Parties; § 2.33 – defining Released Claims.) Additionally, Plaintiffs, Settlement Class Members, and the Plan agree not to sue, and are voluntarily enjoined from instituting any action relating to the Released Claims, other than any action to enforce the terms of the Settlement Agreement. (*Id.* § 8.2.) The full scope of the Release and Covenant Not to Sue is set forth in the Settlement Agreement at Article 8.

### C. Settlement Notice and Reaction to the Settlement

The Court's preliminary approval order appointed Angeion Group ("Angeion") as Settlement Administrator to provide Settlement Notice. (ECF No. 147, ¶ 9.) The Plan's recordkeepers provided Angeion with Settlement Class Member information in order to send

Settlement Notice via email and/or first class mail. (Joint Decl., Ex. 15, ¶ 4.) Prior to disseminating Settlement Notice, Angeion performed extensive cleansing, deduplication, and validation of the email addresses, and updated mailing addresses utilizing the National Change of Address ("NCOA") database. (*Id.*) On May 4, 2022, the Court-approved Settlement Notice was emailed to 36,117 Settlement Class Members. (*Id.*, ¶ 5.) After review of the list of undeliverable emailed Settlement Notices, it was noted that approximately 6,105 of those Settlement Notices were sent to SPAM folders. (*Id.*) After discussion with the parties, the SPAM filters were able to be lifted, and on May 13, 2022, Angeion re-emailed these 6,105 Settlement Notices. (*Id.*) On May 31, 2022, the Court-approved Settlement Notice was mailed via USPS first-class mail to 9,718 Settlement Class Members. (*Id.*, ¶ 6.) This number included 8,720 Settlement Class Members for whom an email address could not be found and 998 Settlement Class Members whose e-mails were ultimately undeliverable. (*Id.*) Angeion utilized commercially reasonable efforts to locate any Settlement Class Members whose mailed Settlement Notice was returned. (*Id.*) Angeion has re-mailed 710 Settlement Notices that were returned as undeliverable and for which an updated address was located. (*Id.*) As a result of the Notice efforts stated above, Settlement Notice has been sent to 44,837 Settlement Class Members and was successfully delivered to approximately 98% of Settlement Class Members. (*Id.*, ¶ 7.)

In addition to sending email and mail notice, on May 4, 2022, Angeion also established a Settlement Website (www.washingtonuniversityerisasettlement.com) and a designated toll-free hotline (1-888-874-1788) to provide Settlement Class Members with more information about the case. (*Id.* ¶¶ 8-9.) Among other things, the Settlement Website included: (1) the operative Complaint; (2) the Preliminary Approval Order; (3) the Settlement Agreement; (4) the Settlement Notice; (5) a list of important deadlines; (6) answers to frequently asked questions; and (7) contact information to find out more information. (*Id.* ¶ 9.) The reaction of the Settlement Class Members to the Settlement has been favorable, and there have been no objections to the Settlement. (*Id.* ¶ 10; *see also* Joint Decl. ¶¶ 15, 34.)

### D.    Review and Approval by the Independent Fiduciary

In addition to this Court's review and approval, and as is required by the terms of the

Settlement and pursuant to the provisions of Prohibited Transaction Class Exemption 2003-39, the Settlement was submitted to an experienced Independent Fiduciary, Fiduciary Counselors, Inc. ("FCI"), whose sole loyalty is to the Plan and its participants and beneficiaries (including the Settlement Class Members). The costs associated with the retention of the Independent Fiduciary will be an Administrative Expense of the Settlement. (Settlement § 2.3.) The Settlement Agreement provides that the Independent Fiduciary must, at least 45 days prior to the Final Fairness Hearing, review and consider the Settlement and determine whether to approve and authorize the settlement of Released Claims on behalf of the Plan. (*Id.* § 3.1-3.1.5)

Accordingly, FCI has provided the parties with a report approving and authorizing the Settlement. ("FCI Report" attached as Ex. 14 to the Joint Decl.) In the course of its analysis, FCI (1) reviewed court documents and other information and documents in the litigation; (2) interviewed counsel for the Parties; (3) evaluated the strengths and weaknesses of the Parties' claims and defenses in the litigation; (4) reviewed and analyzed the terms of the Settlement, including, but not limited to, the Settlement consideration and the scope of the Settlement release; (5) reviewed the Plan of Allocation proposed by the Parties; and (6) reviewed Class Counsel's request for Attorneys' Fees and Expenses and Plaintiffs' Compensation awards. (*Id.* at pp. 1-10.) Based on its review, FCI found, *inter alia*, that:

> [1] The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone[;]
>
> [2] The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances[; and]
>
> [3] The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

(*Id.* at pp. 9-11.) Based on these finding, FCI, "authorize[d] the Settlement in accordance with PTE 2003-39" and provided "a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan." (*Id.* at 11.)

## III.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, and Adequate and Should be Finally Approved

#### 1.   Legal Standard

"A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999)), quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, 921 F.2d 1371, 1388 (8th Cir.1990). Settlements are especially encouraged in the class action context where "the uncertainty of outcome, difficulties of proof, [and] length of litigation" means these types of actions "lend themselves readily to compromise." Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002). Indeed, such settlements are "presumptively valid." *Id.*; *In re Uponor, Inc., F1807 Plumbing Fittings Prods Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist.*, 921 F.2d at 1391).

Under Federal Rule 23(e)(2), a court may approve a class settlement "after a hearing and only on finding that it is fair, reasonable, and adequate." *See also*, *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017). A court must assess whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

The Eighth Circuit has held that district courts should also consider the following four factors in evaluating a class-action settlement: (1) the merits of the plaintiff's case[s] weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *Van Horn v.*

9

*Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (the "*Van Horn* Factors"); *see also*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Keil*, 862 F.3d at 693 (quoting *Uponor*, 716 F.3d at 1063).

### 2. The Eighth Circuit's Van Horn Factors Support Approval of the Settlement

#### a. The Merits of Plaintiffs' Case Weighed Against the Terms of the Settlement Support Approval

Balancing the strength of the plaintiff's case against the terms of the settlement is the most important factor in determining whether a settlement is reasonable. *Marshall v. NFL*, 787 F. 3d 502, 508 (8th Cir. 2015) (*citing Van Horn*, 840 F. 2d at 607.) The $7,500,000 Settlement here fashions significant relief for the Class. Class Counsel's damages expert estimated damages to be at least $37.1 million, by calculating the difference between what Plan participants paid for the allegedly excessive recordkeeping fees and what they should have paid. (Joint Decl., ¶ 21.) The Settlement represents approximately 20% of the potential damages alleged and equates to approximately 0.13% of the Plan's assets. (*Id.*) These amounts are in line with other similar ERISA class action settlements. *See, e.g.*, *Sims v. BB&T Corp.*, No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019) (approving settlement of approximately 19% of estimated damages); *Price v. Eaton Vance*, No. 1:18-cv-12098-WGY, Dkts. 52, 57 (D. Mass. Sep. 24, 2019) (approving settlement that equaled approximately 24% of expected value); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving 20% recovery); *Brown-Davis v. Walgreens*, No. 1:19-cv-05392 (N.D. Ill.) (approving $13.75 million settlement equaling approximately 0.135% of plan assets); *Andrus v. New York Life Ins. Co.*, 1:16-cv-05698-KPF, Dkt. 84 (S.D.N.Y. Jun. 15, 2017) (approving $3 million settlement, equaling approximately 0.15% of plan assets); *Karg v. Transamerica Corp.*, No. 1:18-cv-00134-CJW-KEM, Dkt. 98 (N.D. Iowa Nov. 11, 2021) (approving $5.4 million settlement, equaling approximately 0.284% plan assets); *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 U.S. Dist. LEXIS 105792 (M.D.N.C. Jun. 24, 2019) (approving $10.65 million settlement, equaling approximately 0.227% of plan assets); *Daugherty v. University of Chicago*, 1:17-cv-3736, Dkt. 77 (N.D. Ill. Sept. 12, 2018) (approving $6.5 million

settlement, equaling approximately 0.295% of plan assets); *Nicolas v. Trustees of Princeton Univ.*, No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) (approving $5.8 million settlement, equaling approximately 0.263% of plan assets); *Cunningham v. Cornell Univ.*, 1:16-cv-6525, Dkt. 441 (S.D.N.Y. Dec. 22, 2020) (approving $225,000 settlement, equaling approximately 0.007% of plan assets).

Along with the monetary relief, the court also considers the "non-monetary relief offered under the settlement." *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018). As stated above, the Settlement provides for substantial non-monetary relief during a three-year Settlement Period including, *inter alia*: (1) providing annual fiduciary training; (2) evaluating the Plan's Investment Policy Statement and implementing updates as appropriate; and (3) issuing a Request for Proposals for recordkeeping services. This non-monetary relief benefits not only Settlement Class Members, but all Plan participants, including future participants. *See Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2015 U.S. Dist. LEXIS 91385, *5 (D. Minn. Jul. 13, 2015) ("Current and future Plan participants will continue to benefit for years from the affirmative relief obtained"). In addition to providing substantial value to Class Members, the Settlement meets the other indicia of "substantive" fairness set forth in Rule 23(e)(2)(C)-(D).

Further, the Settlement is not a claims-made settlement, nor will any portion of the Settlement Fund revert to Defendants based on opt-out rates or otherwise. (Settlement § 6.20.) Rather, any amount remaining in the Settlement Fund, as of eighteen (18) months after the Effective Date, "will be paid to the Plan for the purpose of defraying administrative fees and expenses." (*Id.*) These factors further support Settlement approval. *See*, William Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ("Newberg") ("[C]ourts are especially wary of complex claiming programs coupled with either of two other settlement facets: reversionary funds [or] claims-made settlements…. Conversely, a settlement without a claims-made procedure (where a sum certain is disgorged from the defendant) is more likely to be found fair, reasonable, and adequate.))

In sum, findings on liability and damages in this Action are uncertain, and the merits of Plaintiffs' case weighed against the terms of the Settlement support approval.

11

### b. The Costs, Risks, and Delay of Further Litigation Support Settlement

The "costs, risks, and delay" associated with taking this case to trial—and, inevitably, on appeal—weigh in favor of approval. Rule 23(e)(2)(C)(i). In reviewing a settlement for approval, the court "does not try the case" but instead identifies the disputed issues that make it less likely for the plaintiffs to receive a full recovery. *Anderson v. Travelex Inc. Servs.*, No. 8:18-cv-00362-JMG-SMB, 2021 U.S. Dist. LEXIS 181238, *7 (Sept. 22, 2021 D. Neb.) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). "If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation." *Id.* at *6 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995)).

In a claim for imprudence, such as here, "[n]umerous courts have emphasized the many hurdles plaintiffs must clear to succeed." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 466 (D. Md. 2014). Two hurdles in particular—establishing liability and damages—would potentially involve substantial cost, risk, and delay.

Absent this Settlement, continued litigation of this Action would be complex and lengthy, requiring the investment of considerable resources by both the parties and the Court. Although Plaintiffs believe there is strong support for the claims, there are inherent risks in any litigation, another factor weighing in favor of approval. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005). If the litigation had continued, the parties would have had to await the Court's determination on Plaintiffs' class certification motion (ECF No. 92), as well as complete briefing and await decision on Defendants' summary judgment motion (ECF No. 129) and motion to exclude the opinions and testimony of Plaintiffs' damages expert (ECF No. 126).

Had these hurdles been cleared, Plaintiffs would have had to prevail at trial on their breach of prudence claims by proving that Defendants' process for monitoring Plan options was "tainted by failure of effort, competence, or loyalty." *Braden v. Wal Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Even if Plaintiffs were to establish a fiduciary breach, the damages are uncertain.

*See Marshall*, 787 F.3d at 512 (noting that the amount of damages depends on expert calculations); *see also Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372, 1384 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (holding that difficulty in determining damages supports settlement approval); *Tussey v. ABB, Inc.*, 746 F.3d 327, 338-39 (8th Cir. 2014) (remanding with instruction that district court should "reevaluate its method of calculating the damage award" and characterizing damages award as "speculative"). Indeed, the parties' competing experts' reports on liability and damages set the stage for a battle of the experts.

The Settlement avoids these risks and will provide a prompt and certain benefit to the Settlement Class, rather than risk a smaller recovery — or none at all — after additional years of litigation and appeals. Courts have acknowledged that ERISA fiduciary breach cases "often lead [] to lengthy litigation." *Krueger*, 2015 U.S. Dist. LEXIS, at *5. ERISA fee cases may last for a decade or longer. *See*, *e.g.*, *Tussey v. ABB, Inc.*, No. 2:06-cv-4305-NKL, 2017 U.S. Dist. LEXIS 203969 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, No. 07-cv-5359, 2017 U.S. Dist. LEXIS 130806 (C.D. Cal. Aug. 16, 2017) (trial judgment in a case filed 10 years earlier). The potential for protracted litigation supports the Settlement's approval. *See also*, *Cullan & Cullan LLC v. M-Qube, Inc.,* No. 8:13-cv-172, 2016 U.S. Dist. LEXIS 132325, *23 (D. Neb. Sept. 27, 2016) (approving settlement because it provided "a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal…").

In light of all of these costs, risks, and delay of trial and appeal, the Settlement represents a favorable outcome for Settlement class members.

### c. Defendants' Financial Condition

Founded in 1953, Washington University in St. Louis is a private research university located in St. Louis, Missouri.[2] As of June 20, 2019, the University's endowment was valued at over $13.7 billion. *Id.* The parties entered into the Settlement with Defendants agreeing to pay the

---

[2] *See* https://wustl.edu/about/university-facts/ (last visited July 19, 2022).

full settlement amount. *See, e.g., Cooper v. Home Care, Inc.*, No. 4:16-cv-1293-DGK, 2018 U.S. Dist. LEXIS 119748, at * 11 (W.D. Mo. Jul. 18, 2018).

### d. No Opposition to the Settlement

As of the date of the filing of this motion, Plaintiffs are not aware of a single objection to the Settlement suggesting a favorable reaction to the Settlement from Settlement Class Members. (Joint Decl. ¶¶ 15, 34, Ex. 15, ¶ 10.) "The absence of any opposition to the settlement strongly supports final approval." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 U.S Dist. LEXIS 26557, *19 (D. Minn. Feb. 27, 2013); *Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18-cv-00022-JFB-CRZ, 2021 U.S. Dist. LEXIS 23742, * 7 (D. Neb. Feb. 8, 2021) (granting final approval and noting the lack of objections to the settlement).

### 3.    Class Counsel Have Significant Experience with Complex ERISA Class Actions and Have Adequately Represented the Settlement Class

Class Counsel are highly experienced ERISA litigators and strongly support the Settlement. In deciding whether a proposed settlement warrants approval, the experienced views of counsel are to be accorded deference. *DeBoer*, 64 F. 3d at 1178 (citing *Armstrong v. Board of Sch. Dirs. of Milwaukee*, 616 F. 2d 305, 325 (7th Cir. 1980.) As set forth in more detail in each firm's resume, Class Counsel have served as lead or co-lead counsel in many class actions similar to this case. (*See,* Exs. 1-6 to the Joint Decl.; e.g., *Nicolas v. Trustees of Princeton Univ.*, No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) ($5.8 million settlement); *Daugherty v. University of Chicago,* 1:17-cv-3736, Dkt. 77 (N.D. Ill. Sept. 12, 2018) ($6.5 million settlement); *Short v. Brown Univ.*, No. 1:17-cv-00318, Dkt. 55 (D.R.I. Aug. 2, 2018) ($3.5 million settlement); *Lechner v. Mutual of Omaha Inc. Co.*, No. *:18-cv-00022, 2021 U.S. Dist. LEXIS 23742 (D. Neb. Feb. 8, 2021) ($6.7 million settlement).

Class Counsel expended a great deal of time, effort and expense investigating Defendants' documents, practices, and actions prior to and since filing this action. Before filing this action, Class Counsel rigorously investigated the Plan's investment options, which included examining and evaluating the Plan-related documentation and investment performance data, including, inter alia: the disclosure documents provided to Plan participants that detailed the fees and investment

options; the Plan's filings with the Department of Labor; and the filings by each of the Plan's investment options with the Securities and Exchange Commission ("SEC"). (Joint Decl. ¶ 6.) Class Counsel also interviewed multiple current and former Plan participants, identified appropriate comparator funds, and calculated the expense ratios of the lower-cost alternatives. (*Id.*)

After commencing this action and throughout its duration, Class Counsel expended all resources necessary to prosecute the case vigorously and effectively. Plaintiffs opposed Defendants' motion to dismiss the complaint, and appealed its dismissal to the Eighth Circuit, which reversed in part and remanded for further proceedings. *Davis v. Wash. Univ. in St. Louis*, 960 F. 3d 578 (8th Cir. 2020.) (*Id.* ¶ 7.) Once discovery began, Class Counsel engaged in and completed extensive fact and expert discovery through written discovery, depositions, and voluminous document production. (*Id.* ¶ 10.) Class Counsel retained and worked closely with two experts with extensive industry experience to opine on the prudence of Defendants' processes and the alleged injury to the Plan resulting from Defendants' decisions. (*Id.* ¶¶ 10,12,21.) Defendants designated one expert witness, and the parties exchanged expert reports. (*Id.*) Class Counsel also fully briefed their class certification motion and reply (ECF Nos. 92, 93, 110), and began opposition briefing on Defendants' motion for summary judgment and motion to exclude Plaintiffs' liability expert (ECF Nos. 126-133.) (*Id.* ¶ 12.)

### 4.    Plaintiffs Have Adequately Represented the Settlement Class

Plaintiffs Davis, Elliot and Sims-King each played an instrumental role in the development and prosecution of this action. (*See* Joint Decl. ¶¶ 34-35). Plaintiffs gathered documents, sat for depositions, responded to discovery requests, and worked with Class Counsel to develop an understanding of the operation of the Plan. (*Id.*) Throughout the proceedings, Plaintiffs have faithfully attended to their duties to act on behalf of current and former Plan participants. (*Id.*) Through Class Counsel, Plaintiffs have proposed a settlement that awards all Settlement Class Members, including Plaintiffs, their proportionate share of the Settlement proceeds based on their investments the Plan. Thus, the interests of Plaintiffs and absent Class Members align because they bring the same claims, for the same remedies, under the same legal theories applicable to all Class Members, who will recover their proportionate share of the Settlement Fund under the Plan of

15

Allocation.

### 5.    The Settlement Was Reached After Arms'-Length Negotiations with the Assistance of an Experienced Mediator

The proposed Settlement is the result of lengthy, contentious and complex arms-length negotiations between the parties. Upon Court approval and appointment of Hunter Hughes III as a neutral mediator, who has extensive experience handling ERISA fiduciary-breach lawsuits similar to the instant Action, the parties engaged in a full-day mediation. (*Id.* ¶ 13.) Although a settlement was not reached on that day, lengthy and spirited negotiations continued whereby the Parties reached the proposed Settlement. (*Id.*)  *EEOC v. Faribault Foods, Inc.*, 2008 U.S. Dist. LEXIS 29132, *12 (D. Minn. March 28, 2008) (J. Kyle) (recognizing that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.)

### 6.    Settlement is Otherwise Fair, Reasonable, and Adequate

#### a.    The Proposed Method of Distributing Relief to the Class Will be Highly Effective and Equitable

The Plan of Allocation sets forth an effective and equitable method of distributing the Net Settlement Amount to the Settlement Class Members. These factors also supports final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). As discussed above, the Parties have developed neutral methods to promptly deliver the Settlement proceeds to eligible Settlement Class Members. All eligible Settlement Class Members will receive a *pro rata* share of the Settlement Fund based on their average quarterly account balance during the Settlement Class Period. (Settlement, § 6.3.) Furthermore, the Settlement provides for all Current Participants and Former Participants whose distribution amount is at least $25 to receive their distribution tax-deferred. (*Id.* §§ 6.2.1-6.2.2.) Consequently, "the actual value to the class for the monetary part of the settlement is more than [$5.4] million." *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 U.S. Dist. LEXIS 138880, *9 (W.D. Mo. Aug. 16, 2019) (hereinafter "Tussey I"). The method for allocating the Net Settlement Amount and for paying Class Members ensures that Administrative expenses will be kept to a minimum and the greatest number of Class Members will receive a benefit. If funds remain in the Settlement Fund as a result of uncashed checks the funds will be

distributed to the Plan to defray administrative fees and expenses, so that no portion of the funds reverts to Defendants. (*Id.* § 6.20.) Notably, after being informed of its terms through the Court-approved Notice, no Class Member has objected to the Settlement.

> **b.** **The Request for Attorneys' Fees and Expenses and Plaintiffs' Compensation Awards Are Fair, Reasonable, and In Line with Other Cases**

The attorneys' fee requested of $2,500,000 represents one-third (33 1/3%) of the value of the monetary relief, which is fair, reasonable and consistent with fee awards in similar cases. *See Krueger*, 2015 U.S. Dist. LEXIS 91385, at *1 (stating that courts must "consider the affirmative relief obtained when evaluating the overall benefit to the class"); *see also*, *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703, 2014 U.S. Dist. LEXIS 12037, *5 (S.D. Ill. Jan. 31, 2014*); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.71 (2004).

Courts in the Eighth Circuit, and around the country, have frequently awarded attorney fees of 33 1/3% to 36% of a common fund. *See, e.g.*, *Lechner*, 2021 U.S. Dist. LEXIS 23742, at *12 (one-third fee); *Karg*, 1:18-cv-00134-CJW-KEM, Dkt. 98 (one-third fee award); *Tussey I*, 2019 U.S. Dist. LEXIS 138880 (one-third fee award) (collecting cases demonstrating that courts in this district routinely award attorneys' fees amounting to one-third of the settlement fund); *Krueger*, 2015 U.S. Dist. LEXIS 91385, *7 (one-third fee award); *Sweda v. University of Pennsylvania*, No. 2:16-cv-4329, 2021 U.S. Dist. LEXIS 23990, *19 (E.D. Pa. Dec. 14, 2021) (one-third fee award); *Cates v. Trustees of Columbia Univ. in City of New York*, No. 1:16-cv-6524, 2021 U.S. Dist. LEXIS 200890, *19 (S.D.N.Y. Oct. 18, 2021) (one-third fee award); *Henderson v. Emory Univ.*, No. 1:16-cv-2920, 2020 U.S. Dist. LEXIS 218676, *4-5 (N.D. Ga. Nov. 4, 2020) (one-third fee award); *Cunningham v. Cornell Univ.*, No. 1:16-cv-6525, Dkt. 441 (S.D.N.Y. Dec. 22, 2020) (one-third fee award); *Kelly v. Johns Hopkins University*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, *7 (D. Md. Jan. 28, 2020) (one-third fee award); *Nicolas v. Trustees of Princeton Univ.*, No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) (one-third fee award); *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-2086, 2019 U.S. Dist. LEXIS 242062, *7 (M.D. Tenn. Oct. 22, 2019) (one-third fee award). The Independent Fiduciary has also found the requested amounts

reasonable. (FCI Report, pp. 8-9). Accordingly, the fee request is reasonable.

The request to be reimbursed for $623,730.14 in litigation expenses—including, *inter alia*, experts, depositions, and data storage and development—are also reasonable. Class Counsel's out of-pocket litigation expenses covered by this request were reasonably incurred and necessary to the prosecution of this case and are therefore properly recoverable. Indeed, working on a contingency basis, Class Counsel had a strong incentive to keep expenses at a reasonable level, *Krueger*, 2015 U.S. Dist. LEXIS 91385 at *9, and did so here, as a comparison with the amount of costs that courts have approved in similar cases makes plain. *See, e.g.*, *Tussey I*, 2019 U.S. Dist. LEXIS 138880, *18 (approving reimbursement of $2,256,805 from common fund); *Krueger*, 2015 U.S. Dist. LEXIS 91385, *11 (reimbursement of $782,209.69); *see also*, *Tracey v. Mass. Inst. of Tech.*, No. 1:16-cv-11620, Dkt. 317 (D. Mass. May 29, 2020) (reimbursement of $522,021); *Cates,* 2021 U.S. Dist. LEXIS 200890, at *24 (reimbursement of $638,967).

The request for a $5,000 for a service award for each Class Representative is also reasonable. *See, e.g.*, *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) ("Courts routinely recognize and approve incentive awards for class representatives.") (collecting cases). As detailed in Section (I)(A)(3) above, from the inception of the Action, Plaintiffs have faithfully attended to their duties to act on behalf of other Plan participants, including by (1) responding to document requests and interrogatories; (2) reviewing and approved pleadings; (3) preparing for and being extensively questioned by Defendants during their depositions; and (4) being involved in the settlement. (Joint Decl., ¶¶ 34-25.) This request is within the range of awards that courts within this Circuit have authorized. *See, e.g.*, *Lechner*, 2021 U.S. Dist. LEXIS 23742, at *11 (awarding $10,000 to each of three plaintiffs is "in line with other incentive awards in this type of case"); *Karg*, 1:18-cv-00134-CJW-KEM, Dkt. 98 ($15,000 award to each of five plaintiffs); *Tussey I*, 2019 U.S. Dist. LEXIS 138880, *18 ($25,000 to each of three plaintiffs); *Krueger*, 2015 U.S. Dist. LEXIS 91385, *11 ($25,000 to each of five plaintiffs); *see also*, *Nicolas*, No. 3:17-cv-03695-DEA, Dkt. 72 ($7,500 to one plaintiff); *Short*, No. 1:17-cv-00318, Dkt. 55 ($5,000 to each of three plaintiffs); *Daugherty,* 1:17-cv-3736, Dkt. 77 ($10,000 to each of three plaintiffs).

The request to award Administrative Expenses – including costs associated with the Settlement Administrator and the Independent Fiduciary – are separate and distinct from the parties' litigation expenses, and are reasonably incurred and necessary to effectuate the Settlement and are, therefore, properly recoverable under the common fund doctrine.

Finally, the Settlement Notice advised Settlement Class Members to each of these proposed awards, and no Settlement Class Member has voiced any objection thereto. (Joint Decl. ¶¶ 15, 34.) The lack of objections supports approval of Class Counsel's fee request. *See Krueger*, 2015 U.S. Dist. 91385, *8 ("This Court finds the lack of any objections to be a sign of the Class's support for Class Counsel's Application."); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1002 (D. Minn. 2005) ("No member of the ERISA class objected to . . . the request for attorney fees . . . This silence can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel.").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the proposed Settlement Agreement as fair, reasonable, and adequate; and enter the proposed Final Order and Judgment.

Dated:  August 1, 2022                         Respectfully submitted,

                                                                         */s/ John J. Nestico*
                                                                         Todd S. Collins
                                                                         Ellen T. Noteware
                                                                         BERGER MONTAGUE PC
                                                                         1818 Market Street
                                                                         Suite 3600
                                                                         Philadelphia, PA 19103-6365
                                                                         *tcollins@bm.net*
                                                                         *enoteware@bm.net*

                                                                         Steven A. Schwartz
                                                                         Beena M. McDonald
                                                                         CHIMICLES SCHWARTZ KRINER &
                                                                         DONALDSON-SMITH LLP
                                                                         361 West Lancaster Avenue
                                                                         Haverford, PA 19041

Tel.: 610-642-8500
Fax: 610-649-3633
*steveschwartz@chimicles.com*
*bmm@chimicles.com*

John F. Edgar
EDGAR LAW FIRM LLC
2600 Grand Blvd., Suite 440
Kansas City, Missouri 64108
(816) 531-0033
Fax: (816) 531-3322
*jfe@edgarlawfirm.com*

John J. Nestico
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
6000 Fairview Rd., Suite 1200
Charlotte, NC  28210
Telephone: (510) 740-2946
Facsimile: (415) 421-7105
*jnestico@schneiderwallace.com*

Todd Schneider
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
*tschneider@schneiderwallace.com*

Eric Lechtzin, Esq.
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Cell: 267-408-8445
Main: 215-867-2399
Fax: 267-685-0676
*elechtzin@edelson-law.com*

John J. Carey
John F. Garvey
James J. Rosemergy
CAREY, DANIS & LOWE
8235 Forsyth Boulevard
Suite 1100

20

Clayton, MO 63105
Tel.:  314-725-7700
Fax:  314-721-0905
*jcarey@careydanis.com*
*jgarvey@careydanis.com*
*jrosemergy@careydanis.com*

*Counsel for Plaintiffs*