# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LATASHA DAVIS, JENNIFER ELLIOTT, and MARLA ALIECE SIMS-KING, Individually and as representatives of a class of participants and beneficiaries in and on behalf of the WASHINGTON UNIVERSITY RETIREMENT SAVINGS PLAN, | ) ) ) ) ) ) ) | Case No. 4:17-cv-01641-RLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON UNIVERSITY IN ST. LOUIS, WASHINGTON UNIVERSITY IN ST. LOUIS BOARD OF TRUSTEES, WASHINGTON UNIVERSITY IN ST. LOUIS RETIREMENT PLAN ADVISORY COMMITTEE, WASHINGTON UNIVERSITY IN ST. LOUIS PLAN ADMINISTRATION COMMITTEE, and WASHINGTON UNIVERSITY IN ST. LOUIS EXECUTIVE VICE CHANCELLOR AND CHIEF ADMINISTRATIVE OFFICER | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS' COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES

## TABLE OF CONTENTS

I.  INTRODUCTION ………………………………………………………...1

II.  BACKGROUND ………………………………………………………….2

    A.  Prosecution and Settlement of the Action ………………………………………2

        1.  Motion to Dismiss and Appellate Practice ………………………………..2

        2.  Discovery Proceedings ……………………………………………………3

        3.  Extensive Motion Practice ………………………………………………...3

        4.  The Settlement Negotiations and the Proceedings ………………………..4

        5.  Additional Work to be Performed …………………………………………4

III.  THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD AS
FAIR AND REASONABLE ……………………………………………………...5

    A.  Legal Standard …………………………………………………………………5

    B.  An Analysis of the Relevant *Johnson* Factors Supports Class
Counsel's Fee Request…………………………………………………………5

        1.  The Settlement is Substantially Beneficial to the Settlement Class ……….5

        2.  Class Counsel Undertook Significant Risk ………………………………..7

        3.  The Factual and Legal Issues in the Action Were Complex ………………8

        4.  Class Counsel are Highly Experienced and Skilled ……………………….9

        5.  Class Counsel Spent Considerable Time and Effort Prosecuting
the Action ………………………………………………………………..10

        6.  No Class Member Has Objected to the Settlement to Date ……………….10

        7.  The Requested Attorneys' Fee Award of One-Third of the
Settlement Fund is Consistent With Fee Awards in Similar Cases ………11

    C.  A Lodestar Cross-Check Confirms That the Attorneys' Fees
Sought Are Reasonable ………………………………………………………12

D.  The Independent Fiduciary Finds the Fee Request Reasonable …………………14

IV.    THE COURT SHOULD APPROVE THE REQUESTED LITIGATION
EXPENSES ………………………………………………………………...…15

V.    THE COURT SHOULD APPROVE THE REQUESTED PLAINTIFFS'
COMPENSATION OR SERVICE AWARDS …………………………………...16

VI.    THE COURT SHOULD APPROVE THE REQUESTED
ADMINISTRATIVE EXPENSES …………………………………………....18

VII.    CONCLUSION …………………………………………………………………19

# **TABLE OF AUTHORITIES**

## Cases

*Andrus v. New York Life Ins. Co.*,
    1:16-cv-05698-KPF, Dkt. 84 (S.D.N.Y. Jun. 15, 2017)............................................................ 6

*Arenson v. Board of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................................................... 9

*Beesley v. Int'l Paper Co.*,
    No. 3:06-cv-703, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014)................................ 7

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
    504 F. Supp. 3d 265 (S.D.N.Y. 2020)................................................................................... 8, 9

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
    No. 1:15-cv-02062, 2019 U.S. Dist. LEXIS 150302 (S.D. Ind. Sept. 4, 2019) ....................... 15

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................................... 1

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ................................................................................................... 9

*Brown-Davis v. Walgreens*,
    No. 1:19-cv-05392 (N.D. Ill.) ................................................................................................... 6

*Cassell v. Vanderbilt Univ.*,
    No. 3:16-cv-2086, 2019 U.S. Dist. LEXIS 242062 (M.D. Tenn. Oct. 22, 2019) .................... 12

*Cates v. Trustees of Columbia Univ. in City of New York*,
    No. 1:16-cv-6524, 2021 U.S. Dist. LEXIS 200890 (S.D.N.Y. Oct. 18, 2021) ........................ 12

*Clark v. Duke Univ.*,
    No. 1:16-CV-1044, 2019 U.S. Dist. LEXIS 105792 (M.D.N.C. Jun. 24, 2019) ....................... 6

*Cunningham v. Cornell Univ.*,
    1:16-cv-6525, Dkt. 441 (S.D.N.Y. Dec. 22, 2020) ............................................................. 6, 12

*Daugherty v. Univ. of Chi.*,
    No. 17 C 3736, (N.D. Ill.) September 12, 2018 Order, ECF No. 77.............................. 6, 14, 17

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020)...................................................................................................... 2

*Griffin v. Jim Jamison, Inc.*,
    188 F.3d 996 (8th Cir. 1999)...................................................................................................... 5

*Grunin v. IHOP*,
    513 F.2d 114 (8th Cir. 1975).................................................................................................... 13

*Hans v. Tharaldson*,
    No. 3:05-cv-0115, 2013 WL 12253179 (D.N.D. Feb. 25, 2013)............................................. 16

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ................................................................................................ 8

*Henderson v. Emory Univ.*,
   No. 1:16-cv-2920, 2020 U.S. Dist. LEXIS 218676 (N.D. Ga. Nov. 4, 2020) ........................ 12

*Huyer v. Buckley*,
   849 F. 3d 395 (8th Cir. 2017) .............................................................................................. 12

*In re Cigna-American Specialty Health Administrative Fee Litigation*,
   No. 2:16-cv-03967-NIQA (E.D. Pa.), August 29, 2019 Order, ECF No. 101 ........................ 14

*In re Iowa Ready-Mix Concrete*,
   No. C 10-4038-MWB, 2011 U.S. Dist. LEXIS 130180 (N.D. Iowa Nov. 9, 2011) .......... 15, 16

*In re Life Time Fitness, Inc. Tel. Consumer Prot. Act (TCPA) Litig.*,
   847 F. 3d 619 (8th Cir. 2017) .............................................................................................. 11

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ............................................................................................. 16

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................ 5, 7, 11, 13

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ................................................................................................. 5

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ............................................................................................ 11, 13

*Karg v. Transamerica Corp.*,
   No. 1:18-cv-00134-CJW-KEM, Dkt. 98 (N.D. Iowa Nov. 11, 2021) ............................. 6, 12, 17

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) .......................................................................................... 5, 11, 12

*Kelly v. Johns Hopkins University*,
   No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) .................... 12

*Koenig v. U.S. Bank*,
   291 F.3d 1035 (8th Cir. 2002) ............................................................................................. 16

*Krueger v. Ameriprise Fin., Inc.*,
   No. 11-cv-02781, 2015 U.S. Dist. LEXIS 91385 (D. Minn. Jul. 13, 2015) ..................... passim

*Kruger v. Novant Health, Inc.*,
   No. 1:14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ............................................ 9

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ................................................................................................. 8

*Mehling v. New York Life Ins. Co.*,
   248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................................. 6

*Nicolas v. Trustees of Princeton Univ.*,
  No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) ..................................... 6, 12, 14, 17

*Norton v. LVNV Funding, LLC*,
  No. 18-cv-05051, 2022 U.S. Dist. LEXIS 33001 (N.D. Cal. Feb 24, 2022) ........................... 13

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ................................................................................. 11, 12

*Price v. Eaton Vance*,
  No. 1:18-cv-12098-WGY, Dkts. 52, 57 (D. Mass. Sep. 24, 2019) .......................................... 6

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ........................................................................................... 8

*Rosado v. Ebay Inc.*,
  No. 12-cv-04005-EJD, 2016 U.S. Dist. LEXIS 80760 (N.D. Cal. June 21, 2016) ................... 13

*Sacerdote v. New York University*,
  No. 18-2702-cv, 2021 U.S. App. LEXIS 24252 (2d Cir. 2021) ............................................... 7

*Savani v. URS Prof. Sols., LLC*,
  121 F. Supp. 3d 564 (D.S.C. 2015.) ................................................................................... 9

*Sims v. BB&T Corp.*,
  No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019) .............................. 6

*Sweda v. University of Pennsylvania*,
  No. 2:16-cv-4329, 2021 U.S. Dist. LEXIS 23990 (E.D. Pa. Dec. 14, 2021) ........................... 12

*Tibble v. Edison Int'l*,
  2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ..................................................................... 9

*Tussey v. ABB, Inc.*,
  No. 06-cv-04305-NKL, 2019 U.S. Dist. LEXIS 138880
  (W.D. Mo. Aug. 16, 2019) ("*Tussey I*") ...................................................................... passim

*Tussey v. ABB, Inc.*,
  746 F.3d 327, 339 (8th Cir. 2014) ("*Tussey II*") ................................................................. 8

*Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity*,
  2017 WL 655622 (E.D. Mich. Sept. 15, 2014) .................................................................... 9

*Wineland v. Casey's Gen. Stores, Inc.*,
  267 F.R.D. 669 (S.D. Iowa 2009) .................................................................................... 16

*Yarrington v. Solvay Pharms., Inc.*,
  697 F. Supp. 2d 1057 (D. Minn. Mar. 16, 2010) .......................................................... 5, 10, 15

*Zilhaver v. UnitedHealth Grp., Inc.*,
  646 F. Supp. 2d 1075 (D. Minn. 2009) ......................................................................... 5, 15

**Statutes**

19 U.S.C. § 1140 .................................................................................................................... 17

ERISA § 510 ......................................................................................................................... 17

**Other Authorities**

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. of Empirical Legal Studies 27, 35 (2004) .......................................... 12

VIII.   **INTRODUCTION**

Plaintiffs have obtained an outstanding result in this class action alleging a breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendants. Subject to Court approval of the proposed Settlement,[1] Defendants have agreed to a $7.5 million cash payment on behalf of the Settlement Class and the provision of meaningful therapeutic relief on behalf of all Plan participants. These substantial benefits were achieved by Plaintiffs through the efforts of Class Counsel.

Under the "common fund" doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the Settlement proceeds in a case such as this. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In light of the Settlement that has been achieved through their efforts, Class Counsel respectfully petition the Court to award: (1) attorneys' fees of $2,500,000 (one-third of the total monetary value of the Settlement); (2) litigation expenses of $623,730.14 incurred by Class Counsel in furtherance of the case prosecution; (3) Plaintiffs' Compensation (service awards) in the amount of $5,000 for each of the three class representatives, Latasha Davis, Jennifer Elliot, and Marla Aliece Sims-King, and (4) Administrative Expenses in connection with settlement administration, including the notice process and the fees of the Independent Fiduciary.

The time invested by Class Counsel reflects the effort required to vigorously prosecute and resolve the case: the current lodestar is $4,241,685.10, meaning the requested fee represents a *negative* multiplier of Class Counsel's lodestar of 0.59. Class Counsel's requested award falls well within the accepted range of attorneys' fee awards based upon a percentage of a common fund in the Eighth Circuit and is otherwise reasonable in light of the significant result achieved for the Class. In achieving this result, Class Counsel successfully appealed dismissal of the case to the Eighth Circuit and, in addition, completed the fact and expert discovery process and took this case almost to the trial stage by the time the Settlement was reached.

---

[1] Capitalized terms have the meaning set forth in the definitions section of the Settlement Agreement executed on April 15, 2022. (ECF No. 146-1.)

IX.    **BACKGROUND**

A.    **Prosecution and Settlement of the Action**

Class Counsel were retained by Plaintiffs, individually and on behalf of a putative class of participants and beneficiaries of the Plan, with respect to allegations that Washington University breached its fiduciary duties of prudence and loyalty in managing and administering the Plan, thereby causing the Plan to incur excessive recordkeeping and investment fees. (Joint Declaration in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, and Plaintiffs' Motion for Attorneys' Fees and Expenses, Plaintiffs' Compensation Awards, and Administrative Expenses ("Joint Decl.", ¶ 6.) As set forth below, Class Counsel have devoted over 5,200 hours of professional service and advanced over $600,000 in out-of-pocket expenses to develop and pursue the claims against Defendants and negotiate a favorable Settlement for the Class. (*Id.*)

1.    **Motion to Dismiss and Appellate Practice**

The initial complaint was filed by Plaintiffs Latasha Davis and Jennifer Elliott on June 8, 2017, in Case No. 4:17-cv-01641. (ECF No. 1.) Plaintiff Marla Aliece Sims-King filed a separate complaint on June 23, 2017, in Case No. 4:17-cv-01785. Plaintiffs filed a Consolidated Class Action Complaint ("CAC") on August 21, 2017 (ECF No. 24), Defendants moved to dismiss (ECF No. 34), and Plaintiffs opposed the motion (ECF No. 36). The Court granted Defendants' motion and dismissed Plaintiffs' CAC with prejudice on September 28, 2018. (ECF No. 51.) Plaintiffs appealed the Court's dismissal to the United States Court of Appeals for the Eighth Circuit. (ECF No. 52.)

On May 22, 2020, after full briefing and argument, the Eighth Circuit entered an Order affirming in part and reversing in part the judgment of this Court and remanding for further proceedings. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020). After remand, Plaintiffs filed an Amended Consolidated Class Action Complaint (ECF No. 64), and Defendants filed an Answer (ECF No. 65).

On February 2, 2021, with leave of Court (ECF No. 82), Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint ("SAC"). (ECF No. 83.) Defendants filed an Answer and Defenses to the Complaint on February 16. (ECF No. 86.)

### 2.    Discovery Proceedings

After the Court held a Rule 16 conference and issued a Case Management Order (ECF No. 69), the parties undertook – and completed – extensive fact and expert discovery, which included:

- Taking 9 depositions, including 5 fact witnesses and 1 expert witness of Washington University, and 3 fact witnesses from the Plan's investment advisor and recordkeeper;

- Defending each of the 3 Plaintiffs' depositions, and Plaintiffs' 2 experts' depositions;

- Serving and responding to document requests of fact and expert witnesses;

- Reviewing and analyzing over 20,000 documents, consisting of more than 113,000 pages, produced by Defendants and non-parties;

- Retaining and working closely with two experts, each of whom submitted reports and was deposed;

- Negotiating a Protective Order (ECF No. 75) and an ESI Protocol (ECF No. 72);

- Negotiating with Washington University's attorneys regarding various document, data production, and other discovery issues, including through numerous telephone conferences and exchanges of written correspondence;

- Moving to bar Defendants from seeking to call as witnesses at trial potential witnesses whom Defendants did not identify by means of an amendment to their initial disclosures until after 5 pm on the last day of the fact discovery period (ECF No. 114); and

- Serving subpoenas and negotiating with two non-parties to obtain documents bearing upon the Plan's expenses and fees. (Joint Decl., ¶ 10.)

### 3.    Extensive Motion Practice

Plaintiffs filed their motion for class certification on March 15, 2021. (ECF Nos. 92, 93.) Defendants filed their opposition on May 11. (ECF No. 104.) Plaintiffs replied on June 10. (ECF No. 110.) On   August 19, 2021, Plaintiffs moved to prevent testimony at trial from witnesses whom Defendants waited until the last day of the discovery period to identify. (ECF No. 114.) Defendants opposed the motion on September 2, 2021 (ECF No. 116), and Plaintiffs replied on September 10, 2021. (ECF No. 117.)

On January 14, 2022, Defendants filed a motion to exclude Plaintiffs' liability expert and a motion for summary judgment. (ECF Nos. 126-133.) Defendants did not seek to exclude Plaintiffs' loss expert. Briefing on Defendants' motions had not concluded prior to reaching the Settlement.

### 4.    The Settlement Negotiations and the Proceedings

On January 26, 2022, after exchanging briefs, the parties participated in a full-day mediation before Hunter Hughes, III, who served as a neutral mediator approved by the Court. No settlement was reached on January 26, but discussions continued between the parties and Mr. Hughes. Once an agreement-in-principle was reached nearly one month later, consideration of the pending motions was stayed by the Court. (ECF No. 142.) (Joint Decl., ¶ 13.)

Class Counsel devoted considerable time negotiating and documenting the Settlement Agreement. *Id*. ¶ 14. Class Counsel then prepared a preliminary approval motion, which details the Settlement terms. (*See* ECF No. 146.) The Court granted preliminary approval on April 18. (ECF No. 147.)

Pursuant to the Court's Preliminary Approval Order, the Settlement Notice campaign began on May 4, 2022, with the Settlement Administrator publishing a Settlement Website and sending Settlement Notice to approximately 44,837 Settlement Class Members. (Joint Decl., ¶ , Ex. 15, ¶ 7.) The proposed attorneys' fees, litigation expenses, and service awards requested herein, along with the terms of the Settlement, were fully described in the Settlement Notice to the Class. (ECF No. 146-1, §3.2, Ex. D.) To date, no Settlement Class Members have filed objections to the Settlement, including the proposed attorneys' fees, litigation expenses, Plaintiffs' Compensation awards, or Administrative Expenses. (Joint Decl., ¶ 15.)

### 5.    Additional Work to be Performed

Going forward, Class Counsel will prepare for and attend the Final Fairness Hearing on August 31, 2022. (Joint Decl., ¶ 16.) Further, if final approval is granted, Class Counsel will supervise the distribution of the Net Settlement Fund Amount to eligible Settlement Class Members, working with the Settlement Administrator and responding to Class Member inquiries. (*Id*.)

X.   **THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD AS FAIR AND REASONABLE**

Class Counsel are entitled to a reasonable fee award from the common fund. A fee award of $2.5 million, equal to one-third of the monetary value of the Settlement, is reasonable under the seven factor approach adopted by courts within this Circuit and comports with fee awards in similar cases in other Circuits. Moreover, a lodestar cross-check analysis confirms that Class Counsel's requested fee is not only reasonable in light of the hours expended but is significantly less than Class Counsel's lodestar fee.

A.   **Legal Standard**

The Eighth Circuit has held that to determine the reasonableness of a fee award "district courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974)." *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). In cases such as this one, courts have considered the following seven *Johnson* factors:

> (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Tussey v. ABB, Inc.*, No. 06-cv-04305-NKL, 2019 U.S. Dist. LEXIS 138880, *8 (W.D. Mo. Aug. 16, 2019) (hereinafter "*Tussey I*") (considering seven factors listed) (citing *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. Mar. 16, 2010); *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781, 2015 U.S. Dist. LEXIS 91385, *4 (D. Minn. Jul. 13, 2015) (same); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1082-83 (D. Minn. 2009) (same); *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 992–93 (D. Minn. 2005) (same); *see also Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999) ("Nor is it necessary for district courts to examine exhaustively and explicitly, in every case, all of the factors that are relevant to the amount of a fee award."). Each of these factors supports Plaintiffs' request.

B.   **An Analysis of the Relevant *Johnson* Factors Supports Class Counsel's Fee Request**

1.   **The Settlement is Substantially Beneficial to the Settlement Class**

Class Counsel's efforts have brought about a significant monetary recovery and valuable non-monetary relief for the Settlement Class. Class Counsel's damages expert estimated damages to be at least $37.1 million, by calculating the difference between what Plan participants paid for the allegedly excessive recordkeeping fees and what they should have paid. (Joint Decl., ¶ 21.) The Settlement represents approximately 20% of the potential damages alleged and equates to approximately 0.13% of the Plan's assets. *Id.* These amounts are in line with other similar ERISA class action settlements. *See, e.g.*, *Sims v. BB&T Corp.*, No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019) (approving settlement of approximately 19% of estimated damages); *Price v. Eaton Vance*, No. 1:18-cv-12098-WGY, Dkts. 52, 57 (D. Mass. Sep. 24, 2019) (approving settlement that equaled approximately 24% of expected value); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving 20% recovery); *Brown-Davis v. Walgreens*, No. 1:19-cv-05392 (N.D. Ill.) (approving $13.75 million settlement equaling approximately 0.135% of plan assets); *Andrus v. New York Life Ins. Co.*, 1:16-cv-05698-KPF, Dkt. 84 (S.D.N.Y. Jun. 15, 2017) (approving $3 million settlement, equaling approximately 0.15% of plan assets); *Karg v. Transamerica Corp.*, No. 1:18-cv-00134-CJW-KEM, Dkt. 98 (N.D. Iowa Nov. 11, 2021) (approving $5.4 million settlement, equaling approximately 0.284% plan assets); *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 U.S. Dist. LEXIS 105792 (M.D.N.C. Jun. 24, 2019) (approving $10.65 million settlement, equaling approximately 0.227% of plan assets); *Daugherty v. University of Chicago*, 1:17-cv-3736, Dkt. 77 (N.D. Ill. Sept. 12, 2018) (approving $6.5 million settlement, equaling approximately 0.295% of plan assets); *Nicolas v. Trustees of Princeton Univ.*, No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) (approving $5.8 million settlement, equaling approximately 0.263% of plan assets); *Cunningham v. Cornell Univ.*, 1:16-cv-6525, Dkt. 441 (S.D.N.Y. Dec. 22, 2020) (approving $225,000 settlement, equaling approximately 0.007% of plan assets).

In addition, the Parties have developed neutral methods to fairly and effectively apportion the monetary relief among Class Members. All eligible Settlement Class Members will receive a *pro rata* share of the Settlement Fund based on their average quarterly account balance during the Settlement Class Period. (Settlement, § 6.3.) Furthermore, the Settlement provides for all Current

Participants, and Former Participants whose distribution amount is at least $25, to receive their distribution tax-deferred. (*Id.* §§ 6.2.1-6.2.2.) Consequently, "the actual value to the class for the monetary part of the settlement is more than [$5.4] million." *Tussey I*, 2019 U.S. Dist. LEXIS 138880, *9. If funds remain in the Settlement Fund as a result of uncashed checks the funds will be distributed to the Plan to defray administrative fees and expenses, so that no portion of the funds reverts to Defendants. (*Id*. § 6.20.) Notably, after being informed of its terms through the Court-approved Notice, to date no Class Member has objected to the Settlement.

Finally, the Court must also "consider the affirmative relief obtained when evaluating the overall benefit to the class." *Krueger*, 2015 U.S. Dist. LEXIS 91385, at *1.; see *also*, *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703, 2014 U.S. Dist. LEXIS 12037, *5 (S.D. Ill. Jan. 31, 2014*)*; MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.71 (2004). The Settlement provides for substantial non-monetary relief during a three-year Settlement Period, including, *inter alia*: (1) providing annual fiduciary training; (2) evaluating the Plan's Investment Policy Statement and implementing updates as appropriate; and (3) issuing a Request for Proposals for recordkeeping services. This non-monetary relief benefits not only Settlement Class Members, but also future participants. *Krueger*, 2015 U.S. Dist. LEXIS 91385, *5 ("Current and future Plan participants will continue to benefit for years from the affirmative relief obtained").

## 2. **Class Counsel Undertook Significant Risk**

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy*, 364 F. Supp. 2d at 994. That risk was substantial at the outset here. Indeed, in *Sacerdote v. New York University*, 9 F. 4th 95 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022), the district court issued a trial verdict in favor of defendants in a similar case regarding a university's 403(b) retirement plan.

At the outset when Class Counsel took this case on a contingency basis – working without pay for these nearly five years – it was apparent that they would face serious challenges establishing liability and damages. As set forth above in detail, Defendants aggressively litigated this case at every step over nearly five years. Early in the case, Defendants here moved to dismiss the entirety of Plaintiffs' claims. After this Court granted dismissal, Class Counsel appealed to the

7

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS' COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES
CASE NO.. 4:17-CV-01641-RLW

Eighth Circuit. After full briefing and argument thereon, the Eighth Circuit reversed in part allowing Plaintiffs to proceed on certain allegations.

Even after remand Class Counsel faced significant risk. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 466 (D. Md. 2014) ("Numerous courts have emphasized the many hurdles plaintiffs must clear to succeed" on a claim for imprudence under ERISA). Establishing liability for a fiduciary breach under ERISA is a tall order given that courts frequently defer to the decisions of fiduciaries, resulting in outright wins for defendants. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011). In addition, the issues of liability and the proper measure of damages remain hotly contested between the Parties. *Tussey v. ABB, Inc.*, 746 F.3d 327, 339 (8th Cir. 2014) ("*Tussey II*") (remanding with instruction that district court should "reevaluate its method of calculating the damage award" and deeming the damages award made "speculative"). If Plaintiffs were unsuccessful on either liability or damages, recovery could be significantly reduced or lost all together. Despite these uncertainties regarding the outcome of the case, Class Counsel took the case on a wholly contingent basis and was prepared to devote thousands of hours and out-of-pocket dollars to the case. If the risks undertaken by Class Counsel in this matter are not "compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey I*, 2019 U.S. Dist. LEXIS 138880, *10.

### 3.   **The Factual and Legal Issues in the Action Were Complex**

A case such as this requires an understanding of esoteric and complicated rules as well as analysis of multi-layered and opaque financial instruments. Successful analysis and prosecution of the claims in this matter demanded a detailed understanding of the intricacies of ERISA, as well as at least a functional understanding of the operation of corporate benefit plan investment and administrative committees. "ERISA is a complex field that involves difficult and novel legal theories and often leads to litigation." *Krueger*, 2015 U.S. Dist. LEXIS 91385, *5; *see also Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 269 (S.D.N.Y. 2020) ("ERISA 401(k) fiduciary breach class actions are extremely complex and require a willingness to risk significant resources in time and money, given the uncertainty of recovery and protracted and

8

sharply-contested nature of ERISA litigation.")

As noted by Judge Michelson of the Eastern District of Michigan in a similar ERISA matter: "To be sure, this case was complex. It entailed legal issues involving ERISA's intricacies, some of which are unsettled." *Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity*, 2017 WL 655622 *11 (E.D. Mich. Sept. 15, 2014). Class Counsel devoted hundreds of hours of research and analysis even prior to filing the initial Complaints. Moreover, even when a trial judgment is secured, there is often costly and time-consuming appellate litigation that can take many years to resolve. *See, e.g.*, *Tibble v. Edison Int'l*, 2017 WL 3523737, at *4-10 (C.D. Cal. Aug. 16, 2017) (detailing litigation of the matter including trial, appeal to Ninth Circuit, appeal to the Supreme Court, remand to the Ninth Circuit, and finally, further trial proceedings at the district court).

"Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate…class-wide, statutorily based claims for pension benefits." *Savani v. URS Prof. Sols., LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015.) Counsel in ERISA class actions such as this one "must be knowledgeable about this complex and developing area of law, aware of numerous merits and procedural pitfalls, willing to risk dismissal at any stage, and prepared to pursue many years of litigation." *Bekker*, 504 F. Supp. 3d 265, 270. In addition, they must have "expertise regarding industry practices" and be able to analyze pertinent records and data. *See Kruger v. Novant Health, Inc.*, No. 1:14-cv-208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016). Here, Class Counsel deployed its expertise to effectively investigate, litigate, and settle this difficult matter despite its legal and factual complexities.

### 4.    Class Counsel are Highly Experienced and Skilled

Class Counsel include some of the preeminent class action and ERISA firms and attorneys in the country. In the aggregate, they have decades of experience prosecuting and trying complex and class action cases. (Joint Decl., ¶ 23 & Exhibits 1-6 (firm resumes).) Without the experience and tenacity of Class Counsel, it is doubtful that the Settlement could have been achieved.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. *See, e.g.*, *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).

9

Not surprisingly, given the stakes, Defendant retained Morgan Lewis & Bockius LLP, a nationally renowned law firm with a reputation for vigorous advocacy in the defense of complex civil cases. To obtain any recovery at all, Class Counsel had to overcome legal opposition of the highest quality. Counsel for both sides exhibited skill in advocating on behalf of their clients and bringing this case to a fair, reasonable, and adequate resolution, thereby supporting Class Counsel's request for fees.

This case was hotly contested throughout, and the resolution reflects Class Counsel's skill and experience. Class Counsel successfully appealed the dismissal of the Action to the Eighth Circuit; developed the case through extensive discovery, including the review and analysis of several hundred thousand pages of documents and the completion of a challenging and extensive deposition program; retained, assisted and prepared two highly qualified experts; engaged in spirited and wide-ranging motion practice; and propelled the Action to the point that it was almost ready for trial.

### 5. Class Counsel Spent Considerable Time and Effort Prosecuting the Action

Class Counsel has been investigating, litigating, and negotiating with the Defendants in this case since 2017. Through June 2022, Class Counsel working on this case have collectively expended nearly 5,200 hours in attorney and staff time prosecuting this action on behalf of the Settlement Class. (Joint Decl., ¶¶ 6, 29-30.) A breakdown of these hours by professional and law firm level is attached. (*Id*. at Exhibits 7-12.) Class Counsel have exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class. The time and labor spent was reasonable and supports Class Counsel's request for a one-third attorneys' fees award. *See, e.g.*, *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (awarding one-third of fund in fees where class counsel had spent 5,453.5 hours on ERISA class action).

### 6. No Class Member Has Objected to the Settlement to Date

The Court-approved Settlement Notice (ECF No. 146-1), which was disseminated to Settlement Class members on May 4, 2022, described the Attorneys' Fees and Expenses, Plaintiffs' Compensation awards, and Administrative Expenses that Class Counsel intended to

10

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS' COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES
CASE NO.. 4:17-CV-01641-RLW

seek. To date, Class Counsel has received email inquiries from Settlement Class Members with questions about the Settlement but have not received any complaints about the terms of the Settlement or Class Counsel's requested fee. While the deadline for Settlement Class Members to object is August 11, 2022, none, to date, have objected to any aspect the Settlement. The details regarding Class Notice, including the number of Notices mailed or emailed, number of Notices found to be undeliverable, updated search data and other similar information are included in the attached Declaration of Markham Sherwood, representing the Settlement Administrator.

The absence of objections supports approval of Class Counsel's fee request. *See Krueger*, 2015 U.S. Dist. LEXIS 91385, *8 ("This Court finds the lack of any objections to be a sign of the Class's support for Class Counsel's Application."); *In re Xcel Energy*, 364 F. Supp. 2d at 1002 ("No member of the ERISA class objected to the terms of the settlement or the request for attorney fees. …This silence can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel.")

> 7.   **The Requested Attorneys' Fee Award of One-Third of the Settlement Fund is Consistent With Fee Awards in Similar Cases**

"Courts utilize two main approaches to analyzing a request for attorney fees" – the "lodestar" approach and the "percentage of the benefit" approach. *Keil*, 862 F. 3d at 701 (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)). "It is within the discretion of the district court to choose which method to apply." *Id.*; *see also, In re Life Time Fitness, Inc. Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F. 3d 619, 622 (8th Cir. 2017.) In common fund cases, the percentage of the benefit approach is generally recommended, which "permits an award of fees that is equal to some fraction of the common fund." *Id.*; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).

The Eighth Circuit has not set forth a specific benchmark to analyze the reasonableness of attorney fees under the percentage of the fund method. However, courts within this Circuit have held that a "one-third fee is [a] common benchmark in private contingency fee cases," and "with high-risk and high-cost cases such as this, contingency fee arrangements are the 'key to the courthouse' for individuals taking on a large corporation." *Tussey I*, 2019 U.S. Dist. LEXIS

138880, *12 (quoting THEODORE EISENBERG & GEOFFREY P. MILLER, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 35 (2004) (other citations omitted).

Courts in the Eighth Circuit, and around the country, have frequently awarded attorney fees of 33⅓% to 36% of a common fund. *Huyer v. Buckley*, 849 F. 3d 395, 399 (8th Cir. 2017); *see, e.g., Lechner*, 2021 U.S. Dist. LEXIS 23742, at *12 (one-third fee); *Karg*, 1:18-cv-00134-CJW-KEM, Dkt. 98 (one-third fee award); *Tussey I*, 2019 U.S. Dist. LEXIS 138880, at 13 (one-third fee award) (collecting cases demonstrating that courts in this district routinely award attorneys' fees amounting to one-third of the settlement fund); *Krueger*, 2015 U.S. Dist. LEXIS 91385, *7 (one-third fee award); *Sweda v. University of Pennsylvania*, No. 2:16-cv-4329, 2021 U.S. Dist. LEXIS 23990, *19 (E.D. Pa. Dec. 14, 2021) (one-third fee award); *Cates v. Trustees of Columbia Univ. in City of New York*, No. 1:16-cv-6524, 2021 U.S. Dist. LEXIS 200890, *19 (S.D.N.Y. Oct. 18, 2021) (one-third fee award); *Henderson v. Emory Univ.*, No. 1:16-cv-2920, 2020 U.S. Dist. LEXIS 218676, *4-5 (N.D. Ga. Nov. 4, 2020) (one-third fee award); *Cunningham v. Cornell Univ.*, No. 1:16-cv-6525, Dkt. 441 (S.D.N.Y. Dec. 22, 2020) (one-third fee award); *Kelly v. Johns Hopkins University*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, *7 (D. Md. Jan. 28, 2020) (one-third fee award); *Nicolas v. Trustees of Princeton Univ.*, No. 3:17-cv-03695-DEA, Dkt. 72 (D.N.J. Dec. 22, 2020) (one-third fee award); *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-2086, 2019 U.S. Dist. LEXIS 242062, *7 (M.D. Tenn. Oct. 22, 2019) (one-third fee award). The Independent Fiduciary has also found the requested amounts reasonable. (FCI Report, pp. 8-9). An attorney fee award of 33⅓% is, thus, within the range of awards that is fair and reasonable.

## C.      A Lodestar Cross-Check Confirms That the Attorneys' Fees Sought Are Reasonable

Court's will often verify the reasonableness of attorney fees awarded under the percentage of benefit method by cross-checking it against the lodestar method. *Keil*, 862 F. 3d at 701 (citing *Petrovich*, 200 F.3d at 1157). Under the lodestar methodology, "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.*

12

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS' COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES
CASE NO.. 4:17-CV-01641-RLW

(quoting *Johnston*, 83 F. 3d at 244). "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case. The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." *In re Xcel*, 364 F. Supp. 2d at 999.

Through June 2022, Class Counsel has expended nearly 5,200 hours of attorney and staff time prosecuting this matter. (Joint Decl., ¶¶ 6, 29-30 & Exhibits 7-12.) As set forth above, these hours were spent defeating Defendants' motion to dismiss; fully briefing class certification; preparing to oppose Defendants' summary judgment motion and motion to exclude Plaintiffs' liability expert; drafting and responding to written discovery; reviewing and analyzing voluminous documents; taking 9 and defending 5 depositions of fact and expert witnesses; working with liability and damages expert witnesses to prepare reports; and preparing for and attending a mediation with a third-party neutral, and continued negotiations thereafter that resulted in the Settlement.

Class Counsel's collective lodestar to date is $ 4,241,685.10, based on 5,183.8 hours worked. (Joint Decl., ¶¶ 6, 29-30 & Exhibits 7-12.) Based on the collective lodestar, a *negative* multiplier of 0.59 results from awarding 33⅓% of the $2,700,000 Gross Settlement Amount. "The negative multiplier strongly suggests the reasonableness of [a] negotiated fee." *Norton v. LVNV Funding, LLC*, No. 18-cv-05051, 2022 U.S. Dist. LEXIS 33001, *32 (N.D. Cal. Feb 24, 2022) (quoting *Rosado v. Ebay Inc.*, No. 12-cv-04005-EJD, 2016 U.S. Dist. LEXIS 80760, *26 (N.D. Cal. June 21, 2016.)

The Eighth Circuit has identified four factors in setting a reasonable lodestar fee: (1) number of hours counsel expended; (2) counsel's "reasonable hourly rate"; (3) the contingent nature of success; and (4) the quality of the attorneys' work." *See Grunin v. IHOP*, 513 F.2d 114, 127 (8th Cir. 1975). Each of these factors supports Class Counsel's reasonable request for attorneys' fees:

First, as set forth above, Class Counsel have expended almost 5,200 hours to litigate and resolve the Action. The specific steps that Class Counsel undertook have already been discussed,

13

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS'
COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES
CASE NO.. 4:17-CV-01641-RLW

but the diligence and efficiency of counsel is directly responsible for the substantial Settlement amount achieved on behalf of the Class.

Second, Class Counsel's customary rates, which were used for purposes of calculating lodestar here, are based on prevailing fees for this type of complex class litigation. (Joint Decl., ¶ 29.) Courts across the country have approved Class Counsel's rates in ERISA cases and other class actions. *See, e.g., In re Cigna-American Specialty Health Administrative Fee Litigation*, No. 2:16-cv-03967-NIQA (E.D. Pa.), August 29, 2019 Order, ECF No. 101 (approving Chimicles Schwartz rates in ERISA class action); *Daugherty v. Univ. of Chi.*, No. 17 C 3736, (N.D. Ill.) September 12, 2018 Order, ECF No. 77; and *Nicolas v. Trs. of Princeton Univ.*, No. 17-3695, (D.N.J.)  December 22, 2020 Order ECF No.  72 (both cases approving rates for Schneider Wallace Cottrell Konecky LLP and Berger Montague PC).

Third, Class Counsel took this case on a contingent basis, working without pay for nearly five years. This case presented several legal challenges that required intimate knowledge of ERISA, presenting significant challenges and serious risks that Class Counsel assumed in taking on and aggressively pursuing Plaintiffs' case.

Fourth, the quality of Class Counsel's work as highly experienced ERISA litigators added immeasurable value to the years-long and hard-fought litigation, without which the case would not have resulted in such a favorable Settlement.

An award of one-third of the Gross Settlement Amount in attorney's fees – representing a *negative* multiple of 0.59 – is reasonable and well within the range approved by Courts in this Circuit.

### D.  The Independent Fiduciary Finds the Fee Request Reasonable

FCI, the Independent Fiduciary carefully reviewed Class Counsel's fee request, concluding:

> In our experience, the [attorneys' fee] percentage requested and the lodestar multiplier are within the range of attorney fee awards for similar ERISA cases. In light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable. . . .

14

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS'
COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES
CASE NO.. 4:17-CV-01641-RLW

(Joint Decl., ¶ 33 & Exhibit 14, at pp. 8-9.)

XI.     **THE COURT SHOULD APPROVE THE REQUESTED LITIGATION EXPENSES**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Iowa Ready-Mix Concrete*, No. C 10-4038-MWB, 2011 U.S. Dist. LEXIS 130180, *21 (N.D. Iowa Nov. 9, 2011) (quoting *Yarrington*, 646 F. Supp. 2d at 1057); *see also Zilhaver*, 646 F. Supp. 2d at 1084 ("The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation.") (citation omitted). Expenses that are reimbursable from a common fund include many litigation expenses beyond the "narrowly defined 'costs' recoverable from an opposing party under Rule 54(d)," and include, *inter alia*, "expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." *Tussey I*, 2019 U.S. Dist. LEXIS 138880, at *15; *see also Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 1:15-cv-02062, 2019 U.S. Dist. LEXIS 150302, at *17 (S.D. Ind. Sept. 4, 2019) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." (citation omitted)).

Class Counsel have incurred substantial expenses throughout this litigation, totaling $623,730.14. (Joint Decl., ¶ 32 & Exhibit 13).[2] These costs incurred include, *inter alia*, fees for the two experts, mediation, document hosting, reporting, filing, copying, and travel. *Id*. All of these expenses were advanced by Class Counsel with no guarantee they would ultimately be recovered, and most were "hard" costs paid out of pocket to third-party vendors, court reporters, mediators,

---

[2] The vast majority of the expense ($548,000) were paid from a joint Litigation Assessment Fund. The expenses include a reserve of $2,908.83 that is left in the Litigation Assessment Fund. That amount approximates the expected costs, including copying and travel, that that will be incurred in connection with approval proceedings. To the extent there is any money left from that small reserve after payment of such continuing costs, Class Counsel will leave that amount in the Settlement Fund for distribution to Class Members. (Joint Decl., ¶ 32 & fn. 1.)

15

case-related travel and experts. These costs were necessary in conjunction with this litigation and its resolution for the benefit of the Class.

Class Counsel's out of-pocket litigation expenses covered by this request were reasonably incurred and necessary to the prosecution of this case and are therefore properly recoverable under the common fund doctrine. Indeed, working on a contingency basis, Class Counsel had "a strong incentive to keep expenses at a reasonable level," and did so here. *Krueger*, 2015 U.S. Dist. LEXIS 91385, at *9 (reimbursement of $782,209.69); *Tussey I*, 2019 U.S. Dist. LEXIS 138880, *15-16 (reimbursement of $2,256,805); *Hans v. Tharaldson*, No. 3:05-cv-0115, 2013 WL 12253179, at *3 (D.N.D. Feb. 25, 2013); (reimbursement of $2,074,726); *In re Iowa Ready-Mix Concrete*, 2011 U.S. Dist. LEXIS 130180, at *21 (reimbursement of $911,455,92).

According to FCI, the Independent Fiduciary:

> Class Counsel also request reimbursement of $622,918 in litigation costs, including expert fees ($508,523.92), document hosting fees ($53,835.36), reporting fees ($27,377.25) and mediation ($10,000). In light of the extensive discovery, the need to manage and analyze the information available, and the crucial role of experts, Fiduciary Counselors finds the request for expenses to be reasonable.

Joint Decl., Ex. 14, pp. 8-9.[3]

## XII.  **THE COURT SHOULD APPROVE THE REQUESTED PLAINTIFFS' COMPENSATION OR SERVICE AWARDS**

The Court may, in its discretion, authorize compensation or service awards to class representatives for their service to the class out of the common fund. *See, e.g.*, *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) ("Courts routinely recognize and approve incentive awards for class representatives.") (collecting cases). The relevant considerations in determining whether to grant an incentive award to named plaintiffs include the actions plaintiffs took to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiffs expended in pursuing the litigation. *Koenig v. U.S. Bank*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038

---

[3] Class Counsel's lodestar and expenses to date are slightly higher than those reported in FCI's Report due to work performed and expenses incurred after Class Counsel provided the lodestar and expense information to FCI. (Joint Decl., ¶ 33 & fn. 2.)

(8th Cir. 2002). These considerations support a Plaintiffs' Compensation award in the requested amount of $5,000 for each of the three named Plaintiffs.

The Plaintiffs in this Action took substantial risk in pursuing their claims against their current and/or former employer and devoted substantial time and effort that contributed to this Settlement. From the inception of the Action, Plaintiffs have faithfully attended to their duties to act on behalf of other Plan participants, including by (1) responding to document requests and interrogatories; (2) reviewing and approved pleadings; (3) preparing for and being extensively questioned by Defendants during their depositions; and (4) being involved in the settlement. (Joint Decl., ¶¶ 34-35.)

The Court should also consider that a named plaintiff in any employment-related or employee benefits-related litigation faces the risk that the employer, whether or not the employer is the defendant, will view his or her activities unfavorably and mark him or her as a potential troublemaker. In fact, the concern about possible retaliation for initiating claims under ERISA was so great that Congress included a specific provision prohibiting employers from taking any employment-related action against any individual for exercising their rights under ERISA. ERISA § 510; 19 U.S.C. § 1140.

Unlike unnamed Class members, who will enjoy the benefits of the Plaintiffs' efforts without taking any personal action, the named Plaintiffs made significant efforts on behalf of the Class. The valuable efforts of the named Plaintiffs, their willingness to litigate and pursue their representative claims, and the strength of their claims have resulted in a Settlement that will benefit all Settlement Class Members. Under these circumstances, the $5,000 Plaintiffs Compensation awards requested here are reasonable, especially considering the total amount of the Settlement Fund. *See, e.g.*, *Lechner*, 2021 U.S. Dist. LEXIS 23742, at *11 (awarding $10,000 to each of three plaintiffs is "in line with other incentive awards in this type of case"); *Karg*, 1:18-cv-00134-CJW-KEM, Dkt. 98 ($15,000 award to each of five plaintiffs); *Tussey I*, 2019 U.S. Dist. LEXIS 138880, *18 ($25,000 to each of three plaintiffs); *Krueger*, 2015 U.S. Dist. LEXIS 91385, *11 ($25,000 to each of five plaintiffs); *see also*, *Nicolas*, No. 3:17-cv-03695-DEA, Dkt. 72 ($7,500 to one plaintiff); *Short*, No. 1:17-cv-00318, Dkt. 55 ($5,000 to each of three plaintiffs); *Daugherty,* 1:17-

17

PLAINTIFFS' MEMORANDUM OF LAW ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES, PLAINTIFFS' COMPENSATION AWARDS, AND ADMINISTRATIVE EXPENSES
CASE NO.. 4:17-CV-01641-RLW

cv-3736, Dkt. 77 ($10,000 to each of three plaintiffs).

The Independent Fiduciary considered and endorsed the request for Plaintiff awards:

According to the FCI report:

> Furthermore, Class Counsel seek class representative service awards in the amount of $5,000 to each of the three Plaintiffs for a total of $15,000. Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys, produced documents, and helped to prepare their complaint allegations and discovery responses. They prepared for and gave depositions. Fiduciary Counselors finds the request for representative service awards to be reasonable.

(Joint Decl., ¶ 36 & Exhibit 14, p. 9.)

In light of Plaintiffs' considerable effort to obtain the outstanding result for the Class, Class Counsel request that the Court approve the payments of Plaintiffs' Compensation awards to each of the three named Plaintiffs.

## XIII. **THE COURT SHOULD APPROVE THE REQUESTED ADMINISTRATIVE EXPENSES**

Additionally, Class Counsel request payment from the Gross Settlement Fund of Administrative Expenses incurred as a result of the Settlement, in accordance with the Settlement at § 2.3:

> (a) all fees, expenses, and costs associated with providing the Settlement Notice to the Settlement Class Members, including but not limited to the fees and expenses of the Plan's recordkeeper(s) to identify the names and addresses of Settlement Class Members; (b) related tax expenses (including taxes and tax expenses as described in Article 5); (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation, including but not limited to the fees and expenses of the Plan's recordkeeper(s) associated with implementing the Settlement Agreement, facilitating the distribution of funds under the Plan of Allocation, and gathering the data necessary to prepare the Plan of Allocation; and (d) all fees and expenses of the Independent Fiduciary, Settlement Administrator, and Escrow Agent. *Excluded from Administrative Expenses are Defendants' internal expenses and the Settling Parties' respective legal expenses.* All Administrative Expenses shall be paid from the Gross Settlement Amount.

(emphasis added).

The Administrative Expenses covered by this request are separate and distinct from the parties' litigation expenses, and are reasonably incurred and necessary to effectuate the Settlement

18

and are therefore properly recoverable under the common fund doctrine.

## XIV.   <u>**CONCLUSION**</u>

For the foregoing reasons, Class Counsel respectfully request that the Court grant their motion for an Order (a) awarding Class Counsel reasonable attorneys' fees in the amount of $2,500,000 and reimbursement of litigation expenses in the amount of $623,730.14 (b) awarding $5,000 Plaintiffs' Compensation service awards to each Class Representative; and (c) awarding Administrative Fees.

Dated:  August 1, 2022                                      Respectfully submitted,

*/s/  Todd Collins*
Todd S. Collins
Ellen T. Noteware
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103-6365
*tcollins@bm.net*
*enoteware@bm.net*

Steven A. Schwartz
Beena M. McDonald
CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
*steveschwartz@chimicles.com*
*bmm@chimicles.com*

John F. Edgar
EDGAR LAW FIRM LLC
2600 Grand Blvd., Suite 440
Kansas City, Missouri 64108
(816) 531-0033
Fax: (816) 531-3322
*jfe@edgarlawfirm.com*

John J. Nestico

SCHNEIDER WALLACE COTTRELL
KONECKY  LLP
6000 Fairview Rd., Suite 1200
Charlotte, NC  28210
Telephone: (510) 740-2946
Facsimile: (415) 421-7105
*jnestico@schneiderwallace.com*

Todd Schneider
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
*tschneider@schneiderwallace.com*

Eric Lechtzin, Esq.
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Cell: 267-408-8445
Main: 215-867-2399
Fax: 267-685-0676
*elechtzin@edelson-law.com*

John J. Carey
John F. Garvey
James J. Rosemergy
CAREY, DANIS & LOWE
8235 Forsyth Boulevard
Suite 1100
Clayton, MO 63105
Tel.:  314-725-7700
Fax:  314-721-0905
*jcarey@careydanis.com*
*jgarvey@careydanis.com*
*jrosemergy@careydanis.com*

*Counsel for Plaintiffs*